# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JERREL PEREZ
5016 14th Ave.
Kenosha, WI 53140,

Case No. 2:23-cv-153

JANE DOE
(Minor Daughter of Jerrel Perez)
5016 14th Ave.
Kenosha, WI 53140,

    Plaintiffs,

vs.

SHAWN GUETSCHOW
1000 55th St.
Kenosha, WI 53140,

CITY OF KENOSHA
c/o City Clerk
52nd St., Room 105
Kenosha, WI 53140,

KENOSHA UNIFIED SCHOOL DISTRICT
3600 52nd St.
Kenosha, WI 53144,

    Defendants.

---

**NOW COMES** the above-named plaintiffs, Jerrel Perez and Jane Doe, by their attorneys, Martin Law Office, S.C., and as and for their claims for relief against the above-named defendant, allege and show to the Court as follows:

## Jurisdiction and Venue

1.    This is a civil action, pursuant to 42 U.S.C. § 1983, for redress of the deprivation, under color of law, of Jerrel Perez and Jane Doe's Constitutional rights.

2. This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) and its supplementary jurisdiction powers.

3. Venue in the Eastern District of Wisconsin is proper under 28 U.S.C. 1391(b) due to the location of the defendant and the incidents, as alleged herein.

**Parties**

4. The plaintiff, Jerrel Perez, is an adult citizen, and former resident of the State of Wisconsin, formerly residing at 5016 14th Ave., Kenosha, Wisconsin 53140. Jerrel Perez currently resides at 2901 Willow Ln, Apt. A1, Zion, Illinois. Jerrel Perez is the father of the plaintiff, Jane Doe.

5. Jane Doe is the fictitious name for a minor child. Jane Doe is the daughter of Jerrel Perez and, at all times material hereto, including the present, resides with Jerrel Perez.

6. Shawn Guetschow ("Guetschow"), is an adult resident of the State of Wisconsin. At all times material hereto, Guetschow was employed by the City of Kenosha, and was acting under the color of law, authority, customs, ordinances, and regulations of the City of Kenosha and was acting within the scope of his employment as a police officer with the City of Kenosha Police Department. At all times material hereto, Guetschow was simultaneously employed by the defendant, Kenosha Unified School District, and was acting under the color of law, authority, customs, ordinances, and regulations of the Kenosha Unified School District and was acting within the scope of his employment as a security officer with the Kenosha Unified School District. The plaintiffs sue Guetschow in his individual and official capacities with the City of Kenosha and Kenosha Unified School District.

7. The City of Kenosha is a municipality duly incorporated, organized, and existing under the laws of the State of Wisconsin. The City of Kenosha employed Guetschow as a police

officer with the Kenosha Police Department. The Kenosha Police Department is an agency of the City of Kenosha. The City of Kenosha has a legal obligation under Wis. Stat. § 895.46 to indemnify Guetschow and to satisfy any judgment entered against Guetschow because Guetschow was acting within the scope of their employment with the City of Kenosha at all times material hereto.

8. Kenosha Unified School District ("KUSD") is a unified school district organized and operating pursuant to the laws of the State of Wisconsin. Its offices are located at 3600 52nd Street in Kenosha, Wisconsin. Ch. 119 of the Wisconsin Statutes. KUSD operates a middle school, known as Lincoln Middle School, in the City of Kenosha. KUSD employed Guetschow as a security officer assigned to Lincoln Middle School. KUSD has a legal obligation under Wis. Stat. § 895.46 to indemnify Guetschow and to satisfy any judgment entered against Guetschow because Guetschow was acting within the scope of their employment with KUSD at all times material hereto.

**General Allegations**

9. In 2021, Jerrel Perez, Jane Doe, and Jane Doe's siblings moved to Kenosha, Wisconsin.

10. At the time of the subject incident, Jane Doe was twelve years old.

11. During the 2021-2022 academic year, Jane Doe attended sixth grade at Lincoln Middle School, which is located at 6729 18th Ave., Kenosha, Wisconsin, 53143.

12. Jane Doe is described as a "respectful student" in her school records at Kenosha Middle School.

3

13. At all times material hereto, Guetschow's actions, as alleged, were actuated, at least in part, by a purpose to serve his employer, the City of Kenosha, within the scope of his employment as City of Kenosha Police Officer.

14. The Kenosha Police Department has policies and procedures addressing off-duty Conduct. Guetschow was, at all times, subject to the Kenosha Police Department's off-duty policies and procedures.

15. Pursuant to Kenosha Police Department policy and procedure, § 1.13, Guetschow was authorized by the City of Kenosha to make off-duty arrests, such as the arrest of Jane Doe, as alleged herein.

16. Guetschow requested approval for secondary employment with the Kenosha Unified School District on September 2, 2019. Pursuant to his approval for secondary employment, Guetschow was required to certify that he was familiar with policy and procedure, § 1.13, pertaining to his responsibilities regarding off-duty arrests.

17. Guetschow was acting under the color of law and authority of the City of Kenosha, pursuant to the policies and procedures of the Kenosha Police Department, and within the scope of his employment with the City of Kenosha when he used excessive force to effectuate the arrest of Jane Doe on March 4, 2022.

18. At all times material hereto, Guetschow's actions, as alleged, were also actuated, at least in part, by a purpose to serve his employer, the Kenosha Unified School District, within the scope of his employment as a KUSD employee.

19. Guetschow's use of excessive force to effectuate the arrest Jane Doe was made within the scope of his employment with KUSD and was motivated, in part, by a desire to serve KUSD.

20. Upon information and belief, the City of Kenosha did not provide Guetschow with any training regarding security, policing and/or supervision of children and students.

21. KUSD provided no training to Guetschow and does not require any training to employees hired in Guetschow's position.

22. Upon information and belief, Guetschow had a reputation, known to KUSD and the City of Kenosha, for having a short temper.

23. Prior to his employment with the City of Kenosha and KUSD, Guetschow was employed by the Lake Geneva Police Department.

24. Upon information and belief, Guetschow did not receive any training regarding security, policing and/or supervision of children through his employment with the Lake Geneva Police Department.

25. In his final year of employment with the Lake Geneva Police Department, Guetschow's field performance was marked as "unacceptable" and he was described as "emotional, panicked or loses their temper."

26. Upon information and belief, the City of Kenosha and KUSD insufficiently assessed Guetschow's field performance with regard to his duties at Lincoln Middle Schools and in his interactions with children.

27. On March 4, 2022, Jane Doe and another girl in her 6th grade class, Student L, got into an altercation in the cafeteria of Lincoln Middle School.

28. At all times material hereto, Jane Doe was acting in self-defense and upon provocation of threat of physical harm.

29. Guetschow and another KUSD employee, school counselor Erin Waynes, were supervising the students in the cafeteria at the time of the altercation.

30. Prior to the altercation between Jane Doe and Student L, Waynes had observed the interactions between the girls and had asked another student whether the two girls were about to fight, to which the student responded "yes."

31. Waynes approached Guetschow and advised him that she believed Jane Doe and Student L were about to fight.

32. Guetschow and Waynes watched as Student L approached Jane Doe.

33. As the altercation occurred, Guetschow and Waynes ran toward Jane Doe and Student L.

34. When Guetschow got to the girls, Student L was striking at Jane Doe and pushing her back into a cafeteria table.

35. Guetschow grabbed Student L by the shoulders and attempted to remove her from Jane Doe.

36. Guetschow pulled Student L backward, causing Student L to fall backward to the ground.

37. As she was falling backward, Student L grabbed and held onto Jane Doe's left arm.

38. Guetschow then grabbed Jane Doe's arm.

39. Guetschow then lost his balance.

40. Upon information and belief, Guetschow tripped when his left foot became entangled with Student L's legs.

41. Guetschow fell backward, hitting the nearest cafeteria table.

42. Once Guetschow fell, Waynes began to restrain Student L.

43. Guetschow maintained control of Jane Doe, causing her to fall with him.

6

44. At no point did Jane Doe push or otherwise cause Guetschow to fall.

45. After falling, Guetschow immediately gripped Jane Doe around her neck and positioned her on the floor in a prone position.

46. Guetschow then held Jane Doe's face down against the cafeteria floor by placing his right hand on the back of Jane Doe's neck.

47. Guetschow maintained control of Jane Doe's left arm.

48. Jane Doe's right arm was initially pinned under her body.

49. Guetschow did not issue any instructions to Jane Doe.

50. After obtaining control of Jane Doe's left arm, Guetschow pushed his right knee into the back of Jane Doe's neck while simultaneously pushing her head into the cafeteria floor.

51. Guetschow's use of force constituted an unlawful chokehold.

52. The use of a chokehold is prohibited by Kenosha Police Department policy, except where deadly force is allowed and only as a last resort.

53. A reasonable officer in Guetschow's position would not have believed himself to be in imminent danger of death or great bodily harm.

54. A reasonable officer in Guetschow's position would not have believed his actions against Jane Doe were necessary in the defense of another person.

55. A reasonable officer in Guetschow's position would not have believed that the use of a chokehold was reasonable and necessary.

56. In applying the chokehold, Guetschow intentionally shifted his body in order to place his full body weight against the back of Jane Doe's neck.

57. Guetschow's purpose for using the chokehold was to restrict Jane Doe's breathing.

58. Guetschow's intent in using force was to cause pain to Jane Doe based on his misperception that Jane Doe had caused him to fall.

59. Guetschow continued to apply the chokehold after he obtained control of Jane Doe's right arm.

60. Jane Doe did not resist.

61. Jane Doe was unable to breath while Guetschow applied the chokehold.

62. Jane Doe communicated to Guetschow that she could not breathe.

63. At all times, Guetschow was aware, or reasonably should have been aware that Jane Doe could not breathe throughout the application of the chokehold.

64. At all times, Guetschow was aware, or reasonably should have been aware, that chokehold was causing, and was likely to cause significant injury to Jane Doe.

65. Jane Doe did not resist or intend to obstruct Guetschow from obtaining control of her right arm, which was pinned underneath her body and could not be moved due to the physical pressure from Guetschow's bodyweight.

66. At various times, Guetschow repositioned himself in order to increase the amount of pressure that he was exerting against the back of Jane Doe's neck with his knee.

67. Guetschow had multiple opportunities to remove his knee from Jane Doe's neck and failed to do so.

68. Guetschow's use of a chokehold and the duration of the chokehold was an unreasonable and unlawful use of force.

69. Guetschow's use of the chokehold against Jane Doe was not accidental.

70. Following the incident, that same day, Guetschow told Kenosha Police Department Officer Weiher that he thought one of the girls had punched him.

71. Guetschow's use of the chokehold against Jane Doe was motivated by malice and anger at his belief that he was punched.

72. Guetschow intended to cause physical harm to Jane Doe at all material times.

73. As a direct and proximate result of the unlawful use of force by Guetschow, Jane Doe suffered physical injuries, including a traumatic brain injury, cervical strain, and recurrent headaches, which has required Jane Doe to undergo medical treatment for her injuries.

74. As a direct and proximate result of the unlawful use of force by Guetschow, Jane Doe suffered emotional distress, mental trauma, and anxiety, including severe emotional distress, which has required Jane Doe to undergo mental health treatment and counselling and to change schools.

75. As a direct and proximate result of the unlawful use of force by Guetschow, Jane Doe has suffered compensable damages, including the violation of her constitutional rights, loss of liberty, past and future pain, suffering, severe emotional distress, mental anguish, past and future medical expenses, disability, loss of enjoyment of life and dignity, and other compensable injuries and damages, all to the damage of Jane Doe in an amount to be determined at a trial of this matter.

76. After securing Jane Doe's right arm, Guetschow handcuffed Jane Doe and led her from the cafeteria.

77. Guetschow continued to restrain Jane Doe and did not allow her to leave until the Kenosha Police Department arrived to Lincoln Middle School.

78. Guetschow's restraint of Jane Doe constituted an unlawful arrest.

79. Officer "Bonds," Officer "Renteria," and Officer Weiher of the Kenosha Police Department responded to the incident.

80. During his discussions with Kenosha Police Officers Guetschow requested that charges be filed against Jane Doe.

81. Jerrel Perez has suffered damages, including the loss of society and companionship of Jane Doe and the incurrence of medical expenses for her physical and mental injuries.

### First Claim for Relief: Excessive Force – Against Shawn Guetschow

82. Realleges and incorporates herein the allegations of the preceding paragraphs.

83. The use of force employed by Shawn Guetschow in apprehending and arresting Jane Doe, as alleged, including but not limited to, shoving Jane Doe's head and face into the ground, use of a chokehold, and placing his knee on Jane Doe's neck, and handcuffing Jane Doe, were not objectively reasonable under the Fourth Amendment to the United States Constitution.

84. The conduct alleged constituted unreasonable and excessive force and violated Jane Doe's right to be free from unreasonable seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

85. Shawn Guetschow's unreasonable and excessive use of force against Jane Doe was a cause of the injuries sustained by Jane Doe, including the violation of her constitutional rights, loss of liberty, past and future pain, suffering, severe emotional distress, mental anguish, past and future medical expenses, disability, loss of enjoyment of life and dignity, and other compensable injuries and damages, all to the damage of Jane Doe in an amount to be determined at a trial of this matter.

86. Shawn Guetschow's unreasonable and excessive use of force against Jane Doe was a cause of damages sustained by Jerrel Perez, including the loss of society and companionship of Jane Doe and past and future medical expenses for the treatment of Jane Doe

87. Shawn Guetschow acted with malice or in reckless disregard of Jane Doe's federally protected rights.

**Second Claim for Relief: *Monell* Claim against City of Kenosha**
**(Policy, Practice, and/or Custom; Failure to Train and Supervise)**

88. Realleges and incorporates herein by reference the allegations of the preceding paragraphs.

89. Upon information and belief, this incident occurred as a result of the Kenosha Police Department's failure to adequately supervise, discipline, and/or train its employees with regard to secondary employment as school security officers; that the supervision and training of Guetschow was unconstitutionally inadequate and foreseeably likely to result in the violation of the rights of students, including Jane Doe.

90. Upon further information and belief, the City of Kenosha was aware of Guetschow's short temper at the time of his hiring and at the time he was permitted to obtain secondary employment as a school security officer; that the violation of Jane Doe's constitutional rights was a foreseeable and likely consequence of hiring Guestschow and in failing to train Guetschow in interacting with children in the school setting.

91. Upon information and belief, in light of the foreseeable consequences due to failure to adequately train and supervise its off duty police officers, as alleged, the City of Kenosha was deliberately indifferent to the rights of Jane Doe.

92. Upon information and belief, the failure to adequately train and supervise off duty police officers, including Guetschow, caused Jane Doe injuries, including the violation of her constitutional rights, loss of liberty, emotional distress, loss of enjoyment of life and dignity, and other compensable injuries and damages, all to the damage of Jane Doe in an amount to be determined at a trial of this matter.

### Third Claim for Relief: *Monell* Claim against KUSD
### (Policy, Practice, and/or Custom; Failure to Train and Supervise)

93. Realleges and incorporates herein by reference the allegations of the preceding paragraphs.

94. KUSD had a policy of hiring off duty police officers to work in their schools for the purposes of supporting the administration to keep peace within the schools, responding as a law enforcement officer, including enforcing the regulations and rules of the school and State law, providing the school with guidance on law-enforcement related issues and acts, and coordinating any required law enforcement services with appropriate outside agencies.

95. Upon information and belief, KUSD hired off duty police officers who were employed with the Kenosha Police Department, including Guetschow.

96. Upon information and belief, KUSD did not provide any training to off duty officers its employees.

97. Upon information and belief, KUSD did not require off duty officers to receive any training.

98. Upon information and belief, the violation of Jane Doe's constitutional rights, as alleged, occurred as a result of KUSD's failure to adequately supervise, discipline, and/or train its employees, including Guetschow; that the supervision and training of Guetschow was constitutionally inadequate.

99. Upon information and belief, in light of the foreseeable consequences due to failure to adequately train and supervise off duty police officers as alleged, KUSD was deliberately indifferent to the rights of Jane Doe.

100. Upon information and belief, the failure to adequately train and supervise off duty police officers, including Guetschow caused Jane Doe injuries, including the violation of her

constitutional rights, loss of liberty, emotional distress, loss of enjoyment of life and dignity, and other compensable injuries and damages, all to the damage of Jane Doe in an amount to be determined at a trial of this matter.

**WHEREFORE**, the plaintiffs demand judgment against the defendants

A. For an order declaring that the defendant violated Jane Doe's constitutional rights to be free from unreasonable seizure;

B. For an order declaring that the defendants, City of Kenosha and Kenosha Unified School District are responsible under Wis. Stat. § 895.46 to indemnify Guetschow and to satisfy any judgment entered against him in this case;

C. For compensatory damages against all defendants, jointly and severally, in an amount to be determined at trial;

D. For punitive damages against Guetschow in an amount to be proved at trial;

E. For plaintiff's attorneys' fees, pursuant to 42 U.S.C. § 1988;

F. For costs;

G. For such further and additional relief as this Court may deem equitable and just.

**PLEASE TAKE NOTICE THAT THE PLAINTIFFS DEMAND A TRIAL IN THE ABOVE-ENTITLED ACTION.**

Dated: 02/06/2023          **MARTIN LAW OFFICE, S.C.**
                           Attorney for Plaintiff(s)

                           *Electronically Signed by Drew J. De Vinney*
                           _____
                           Drew J. De Vinney
                           State Bar No. 01088576

ADDRESS
7801 S. Howell Avenue, Ste.102
Oak Creek, WI 53154
414-856-2310 (office)
414-856-2315 (fax)
drew@martin-law-office.com